Well, I'm looking at this case. I think we've ascertained, Ms. Sheehy, you traveled the furthest, right, from D.C.? The next NLRB attorney after me, I think he said the same thing. Okay. You each have 20 minutes. Good morning. Good morning, Your Honor. Wesley Fujimoto, representing respondents, HTH Corporation, et al. As stated in the brief, the hotel contends that the National Labor Relations Board erred in its decision on the Administrative Law Justice Decision and seeks reversal of the board decision in denial of petition of enforcement filed by the board.  I believe I'll touch upon some of the hotel's arguments that I feel are most relevant here. You know, obviously we've got two different cases. I know the factual predicate is really the same for both of them in certain ways, but they're two different. So if you stick to this particular case, that would be good. Yes, Your Honor, I will. Thank you. And this is related to the board decision that was issued. Which they're seeking enforcement of. Correct. And we filed a petition for review also on that. And our contention is, at least for one of the issues, is that the exclusion of the testimony of hotel witnesses on the issue of the withdrawal of recognition by the hotel. That, we believe, is an error by the Administrative Law Judge initially and the board in refusing to reverse the ALJ's decision. Well, let me ask you that. Since you argue at length, I think, that the NLRB aired an excluding testimony of hotel employees regarding the lack of majority support for the union, and you claim the hotel need not recognize the union because of its lack of majority. But then, if you look at Levitt's furniture case, the board held that such testimony was only relevant in an RM proceeding where an employer petitions for a board-conducted election, but that to withdraw recognition unilaterally, an employer must have objective evidence that the union has lost majority support. So, is there any objective evidence in the record that shows that the union had lost majority support before December 1, 2007, when the hotel first withdrew recognition? And that's what the employer witnesses from the hotel were going to testify to. At that point in time, this was prior to December 1, 2007, and the employees, before they were prevented from testifying by the ALJ, were going to be speaking about a boycott that the union had done. Prior to that, the lack of support of the union based upon the boycott and the loss of work opportunity for the employees. And we were getting into the testimony of the employees at the hearing when the judge said, no, this isn't relevant testimony. How is that objective evidence that the union has lost majority support? And from these witnesses, from their testimony, they relay that to the official from the hotel, Mr. Robert Minicola, who then, based upon the statements from these employees, their observations, their beliefs, their widespread knowledge of the employer's situation with respect to the union. Well, I guess if there had been, because they won by one vote, right? That's correct, yeah. Okay. But one vote's one vote. If people remember Bush v. Gore, you know, that came down pretty, you know, that still remains contentious to a lot of people, but the court had to make a call. So one vote says you won. So what's the objective? Had there been another election where they lost by one vote? No, Your Honor. No, Your Honor. So wouldn't that be objective evidence? Yes, and the LRB has said, well, you didn't poll the employees, you didn't do a survey of employees, et cetera, or there wasn't a petition at the time prior to December 2007. Well, apparently the ALJ and the board weren't very happy with the way any of the elections were going, I guess. So that wasn't an area where the hotels had great credibility with the board, right? Well, and you raise a good point, Your Honor, with respect to the one-vote victory, and I believe it's like a mantra in this case as far as the hotel's position. But what needs to be— I mean, Bush was still president for eight years, even though he didn't win by a lot of votes. So that's, you know, if you win by one, isn't at some point until you have another election, you win by one? And the context that it seems to play is that because of that, there was anti-union animus by the hotel. What the context of that statement of the one-vote was the hotel's insistence during the bargaining process of the open shop versus the agency shop. Mr. Minicola testified that the one-vote means I have half the people for the union, half the polls against. And, therefore, either way, I have a potential of having an unhappy setting. So, therefore, agree with me that you have an open shop. Let the employees select what they want to do, and they can do what they please. And the insistence of the open shop versus agency shop issue in the collective bargaining— So you're saying that the board defined relevance too narrowly? In terms of the— When it excluded that testimony, you're saying that it defined it too narrowly? And just in your best—how was the board defining what was relevant? The board is— What were they saying? Okay, if it—what would be relevant from the board's perspective? I'm not saying the board's right, but I'm hearing you to say that the board was defining relevance too narrowly, and these witnesses were actually relevant. Yes, Your Honor. And they pointed out the same thing that Your Honor is pointing out, that the testimony did not yield the objective evidence that they feel was sufficient for Mr. Minicola to make that withdrawal of recognition. And the testimony we contend, and we had submitted to both the AOJ and the board, was that it's a longstanding history with the Union Hotel, and the employee sentiment throughout and their disclosures to Mr. Minicola would be relevant, and we believe would have posed or reached that level of objective evidence that— So let me understand. You're saying, as you say in your brief, that they were going to testify as to what other people— what the employees were talking about and about how the employees felt. And themselves. And themselves. Okay. Yes. And I don't see how that is objective evidence for someone to testify what other people are talking about and how they felt. And that's where we cited the general counsel's memorandum with respect to employees' testimony of other employees and the sentiment and that type of evidence being admissible. And so what we were looking at was we have a group of employees willing to testify, willing to say their own experience, willing to express that they have contact with other employees and are familiar with the sentiments of other employees. Also, the onset of the change and shift in certain employees with respect to union sentiment because of the boycott, and thus leading Mr. Minicola to believe that— But an election is to get the views of the employees on the record. I'm sorry, I missed the first part. The purpose of an election is to get an objective record of what the views of the employees are. Your position now is that after the election, there should be testimony of what? The different testimony about what the views of the employees are. Well, in this situation, the one-year period of time where the employer had bargained with the union had expired. And therefore, what the employer was at that point hearing this information coming in from the employees. And similarly, with the petition that it received— Isn't it a little bit like impeaching a jury verdict? You know, a jury comes back and say, like, they convict someone. And then people after that say, well, yeah, I was—you know, I really had to think about it, and I— well, but then they ultimately voted and they convicted the person. Well, you can't—you know, you can't go behind where they were. You go by what they did. Or isn't that the whole thing about why do people— why do they want to vote in secret as opposed to having people—their votes known? You know, what people actually—you know, there's a lot of pressures that come to bear. So I guess, what's the standard of review on excluding evidence here? Is it abuse of discretion? Yes, correct. So if we're making good arguments either way, how could they have abused their discretion? That, you know, I might have done something differently, you know, had I been a trial judge or had I been a board member or something. But if there's two plausible ways to do it and you pick one, how can that really be an abuse of discretion? Well, our position is that at least for the evidence that was presented, it wasn't in equipos, that there was—at least our position is that the evidence, at least from what we presented, was greater in terms of weight and should have been given greater weight insofar as the—what the board had considered. And again, part of the problem was that the record was not complete as far as the employee's testimony, at least from our contention, that the full record with the employee's testimony should have been included. And if it was rejected, fine. It's rejected. But, however, the employees did not have the opportunity, and Mr. Minicola did not have the opportunity to have the support come in for the basis for his decision to withdraw recognition of the union. So let me change the perspective just a little bit here. We're here asked to enforce the board's order, correct? That's the board's petition, Your Honor. Yes. And as I understand it, your client did not contest certain findings. You didn't contest that the hotel had violated the act by threatening an employee with unspecified consequences for being assertive. You didn't contest that the hotel violated the act by using the PBHM as a middleman. And you didn't contest the hotel violated the act by failing to provide information requested by the union in April, August, or September. You did not contest those. It seems to me I must enforce that part of the board's order at least, cannot I not? Well, our position, Your Honor, is that part of the issues that we've raised relate to the types of remedies. It doesn't seem to me, in reading what you've said, that you even contest these findings. Well, Your Honor, and I was going into that with respect to the extraordinary remedies that the board had ordered with respect to the type of findings. I mean, we're not disputing certain and didn't raise appeal issues with certain aspects of the decision. The fact that these findings are undisputed, what significance does that have? It's the first time I've seen a board's order which hasn't had all of its findings attacked. Are you just saying even though those findings are correct, we still can't find any reason here to enforce the order? Yes, because the argument of the board seems to be it's the entire action of the employer, that the employer is a bad entity and, therefore, the entire act with all of these combined infractions are the basis for the violations. Our point is that, nope, there are certain ones that they're in error, and the ones that they found are insufficient to at least in any way lead to the types of remedies that are ordered by the board. If we look at failing to bargain in good faith, if I read Regency Service Cards, it says an employer violates its duty to bargain if the employer fails to bargain in good faith with the union. So I'm looking at the totality of the circumstances. As I understand the evidence, the hotel insisted that any collective bargaining agreement include three provisions that would have excluded the union from any meaningful representation role. Isn't that a lack of good faith? Your Honor, at the time, we believe that that was hard bargaining by the employer. Hard bargaining? Yes, Your Honor. And so it's hard, but it's okay because that doesn't make it not in good faith? Your Honor, again, you need to view the totality of the circumstances. Well, but you argue that the insistence on an open shop does not equate to bad faith bargaining and also refusing a dues checkoff provision, rejection of an arbitration provision, and insistence on a broad management rights provision do not by themselves establish bad faith. But while any one of these by itself might not, why shouldn't we find, as Judge Smith said, that bad faith here on the hotel did all of these things in the totality of the circumstances? Why do you, you know, you can't just parse it out. You have to look at everything. Well, in terms of looking at each individually, then it's looking at the whole picture. And if each individual instance is not, then the whole picture is not, at least the intention of the hotel. But if it's contested on each one of them, then that, you know, you can't just pull everyone out that's, you know, they're entitled to look at all inferences both ways. I understand. Isn't it also true that as soon as your client resumed the management that you withdrew recognition of the union? Yes, Your Honor. Why isn't that lack of good faith? Yeah, and that goes to the objective. I'm not talking about what happened thereafter. Immediately upon taking on this thing, no, you just take on the business, and immediately the union, the recognition is withdrawn. Now, the hotel had bargained. Is that another hard-nosed bargaining? Is that it? Well, the withdrawal of the recognition, Your Honor, is another issue that goes to what I argued earlier in terms of the testimony of the witnesses. Oh, okay. Do you want to reserve any time for rebuttal? Yes, may I? All right. If you want to, like you're a little under five minutes, do you want to reserve that? Yes, please. Okay, thank you. Good morning. Good morning, Your Honors. Barbara Sheehy for the National Labor Relations Board. I'm just going to touch on a couple of points. First, I'll go, again, sort of in the order that. You sort of keep your voice up a little. You swallow it. It's very unusual for me to have a problem being told I'm not loud enough. Okay. I'm going to go sort of in the order that counsel just did to sort of keep things in line there. So first then turning to the withdrawal of recognition, there's just a couple of points I want to make. I think there's a fundamental confusion on the part of opposing counsel and the hotel as to when the type of evidence that when they're referring to the general counsel advice memo, that has to do with when, I think Your Honors already pointed this out, but I just want to make it clear, that has to do with when the employer seeks to withdraw recognition on the basis of a petition that they provide to the board. When you say that, why wouldn't, even assuming the hotel was wrong to withdraw recognition of the union in December of 2007, why wouldn't the disaffiliation petition in June or July of 2008 give the hotel the right to withdraw recognition then? Because at that point, well, first of all, under Levitz, we have to look at when they actually withdrew recognition, which was on December 1, 2007. And Levitz makes it eminently clear that the withdrawal must be predicated on an actual loss of majority support at the time you withdrew. And then in June or July, there was nothing at that point that withdrawal had already taken effect. And the board didn't go into the analysis of what comes of that petition at that point, because you're six months after withdrawal of recognition, two and a half years beyond what has been characterized as a campaign to evade its bargaining obligations. Nobody has any idea whether those signatures on that petition from June or May of 2008, whether those were uncoerced or whether those were truly an expression of employee free choice. So I think Levitz actually is your answer there. It has to be at the time of withdrawal. So the signatures have to do with the good, the RM petition has to do, you can submit that evidence on the basis of a good faith belief. The standard for good faith belief of loss of majority support exists in petitioning for an election to determine whether or not there's actual loss of majority support. What Levitz did was said that standard no longer applies if you actually withdraw recognition. If you don't go through the election, you must show actual loss of majority support. So I just wanted to clean that up, because I think that's still a misunderstanding. And I also wanted to point out, as it relates to the one vote, remember this was the second election. The union did win the second election after the first one was set aside, because the board found objectionable conduct on the part of the company. The second election was run. There were objections again filed by the union to say that the employer had engaged in objectionable conduct. Didn't the board say if you have another election too, we're going to set something, we're going to? No, but I was just speaking to the point that while it was one vote, that was still one, the union still won by one vote, even after the board found that the company had engaged in objectionable conduct. So while the margin of victory was one vote, the board didn't see fit, and it makes sense, not to rerun the election even though the company had engaged in further objectionable conduct. Well, but the hotel, I think, then challenges the board's order extending the certification period for a full year. If, like, the disaffiliation petition is correct and the union has lost majority support of the employees, isn't this, like, then forcing the employees to accept a union they no longer want? And why wasn't the excluded employee testimony relevant to the time to properly extend the certification? Is it, you know, there? Why wouldn't they have been relevant for that? Well, because the disaffiliation petition, at that point, the only reason that was being offered, and the offer of proof as put forward by the company, the hotel, was to show that they were justified in withdrawing recognition. And then once it was excluded properly for that reason, because it happened six months after that. So you're sort of saying if I object on the basis of hearsay and it's not hearsay, then I can't come up with a really good reason that if it was really admissible on other grounds, I can't come up with that later? Well, they didn't seek to move that petition into the evidence for any reason other than to show that the company, to support its contention, that it believed that it properly withdrew recognition. So it really might have been relevant to extending the certification period, but they didn't offer it for those purposes so the board wasn't put on notice? The board wasn't put on notice. And I'm not even sure that I agree it was relevant, because there are many steps that you have to get to before you decide whether it's relevant to that. First of all, the board would, the administrative law judge in the first instance, would have to look at that if it had come in for that purpose, if they sought to move it for that purpose. You talk really fast. A court reporter would hate you, except that we have recording devices. I talk fast, too, so I know that. Slow down. So you'd have, in the first instance, you'd have to have an examination of the petition itself to see if, we're all assuming it is, that it showed a lack of majority support. The fact of the matter is the petition never actually came in. Nobody looked at the signatures. Nobody determined what the effect of this, whether there were duplicate signatures. And additionally, more importantly, what we don't know is whether any of the unfair labor practices preceding that petition had any effect on those signatures. So I don't know that I concede at this point that it was relevant. I think there would have to be a lot of analysis of that evidence coming in for that purpose to determine whether it was relevant. I have a refusal to bargain with faith. And so could you help me with the period of time that that relates to in relation to that petition? I'm sorry, I'm not trying to understand the question. The refusal, the findings with respect to the conduct that constituted a refusal to bargain with faith. Okay. Related to what period of time in relation to the petition that we've just been discussing? Sure. The board found that the employer engaged in unlawful, bad faith bargaining, basically from the time of certification, which was August 2, 2005, until, and there are multiple entities involved, but they're all one employer, and the other side doesn't contest that. It's one single employer, just sort of different names coming in. So from August 2, 2005 until withdrawal in December 1, 2007, you have a finding by the board that at no point was there good faith bargaining. And then you have the withdrawal of recognition, and then six to seven months after that, you have the petition that purported to show less of a majority support. Have they put in evidence that there had been, you know, that had meetings, I think 30-something meetings or something during that period of time, correct? Yes, yes. And so the board heard that evidence, but the board basically said in light of the fact of other actions that you took, it's our conclusion that you never really were intending to do anything. Right. I think what the board says is that, yes, they had 37 meetings. Everybody knows it. That was in the findings. That's pressed by the opposing side. There were at least 37, and I think that's actually just between before PBHM came on the scene. I think it's 37 in that first year, and over 100 tentative agreements. But in the backdrop of all of that was the board's finding that at no point did the hotel have an intention to sign a collective bargaining agreement, that you can go through the motions, you can execute I believe what the administrative law judge characterized as unremarkable non-economic agreements. But at the end of the day, the hotel had no intention to execute an agreement, and it went through a course of conduct whose sole purpose at the end was to run out the certification clock. So it was that conduct. So despite the number of meetings, despite the number of agreements, they didn't have an intent to reach an agreement. So you would say, but looking at that, you would say, yes, they did present evidence of some meetings. There was other evidence presented. The board considered all of it, and it's sort of like they believed parts and not others. I mean, they weren't denying that the meetings occurred. They've just gone in. Absolutely. And this all goes to, I know the court was focusing on when you were specific, when Judge Smith was asking specifically about the good faith bargaining and the content of the proposals. The board didn't rely strictly on the content of those proposals, as offensive as unpalatable to the union as those were. That wasn't the end. They did look at the totality of the circumstances, which requires content of the proposals and conduct away from the bargaining table. So it wasn't even just the number of meetings or that they engaged PBHM as a surrogate and the content of the proposals. Sorry, I interrupted you. It was also the mini-COLAs conduct at the table. So it was totality of circumstances, absolutely, where the board found. Did we find that there was an invalid withdrawal of the recognition of the union in 2007? Do we need to worry about the other withdrawals? You mean the other unilateral actions, Your Honor? No, I don't believe so. And I think we tried to make that point in the brief. And this was one other area I wanted to touch on. So the employer, I think, as this relates to your question about the uncontested violations. That's what I'm trying to do next. Right. So there is in the board's brief on page 25 and 26. I read my mind on that. Right, right, right. Page 25 and 26, we list specifically what we gleaned as they weren't contesting those violations. Technically, I think we could have taken the position that they also didn't contest many of the, so those are all pre-December 1, 2007 violations that we listed. Right. Their brief doesn't specifically take issue with many of the unfair labor practices that occurred post-withdrawal. We took the position, while not articulated in their brief, we took the position that they were justifying those actions on their withdrawal of recognition. So they rise and fall, basically, on the withdrawal of recognition. If they are right on that, this was our, we read the brief, then they, I think, are claiming they were justified in doing everything they did after that, which was changing terms and conditions of employment, giving wages, changing hours of work, changing the number of hotel rooms. So rather than say that we believe they waived all of those each individual unfair labor practices, we make the argument that they were not, I'm sorry, we defend the board's order saying they were not privileged to withdraw. And if the court agrees that the board was correct in that finding, then all of those unfair labor practices, it is our position they have conceded those. Like I said, they rise and fall on the unlawful, on the withdrawal of recognition issue. So I think that was the other issue I wanted to get to on the contested violations. The questions I would have for you, and thank you for giving me your position. I'll expect any response. And I wanted to just say one other thing. I think I got off this before I finished it. On the evidence that was supposed to come in, putting aside the petition, the other set of evidence that they wanted to put in to show that they lawfully withdrew recognition, I think if you read the excerpts of the record where there's the colloquy going back and forth between the administrative law judge, one of the main issues was the leap of faith that the employer would have the administrative law judge do to say, we want to put this, the employer wanted to say we want to put employees forward to say they opposed the boycotts. Now, there were two boycotts. There was one in 2008. That one doesn't matter because the withdrawal happened before that. So there was one in 2007. And what the administrative law judge made clear in that exchange was that he, under Levitz, rightfully, was not going to make that leap, that because employees, even assuming that they were all going to testify we opposed the boycotts, he wasn't going to say then that that led to a specific finding that that employee opposed the boycotts and therefore wanted to withdraw support for the union, that it was that leap of faith he wasn't going to make. So I just wanted to clear that up on what exactly the evidence was. So there were multiple problems with it, one of them being that part of it. Well, they basically said, I heard appellants to say, if they had admitted that evidence and rejected it, they wouldn't be able to dispute it. Of course, people always say that, but by the same token. So, I mean, maybe wasn't relevance just defined a little too narrowly? I think what you also have here is, so you have evidence coming in that doesn't satisfy Levitz in terms of it's a clear articulation that a majority number of employees do not support the union, not that they have general dissatisfaction, not that they're ticked off of something they've done up here, that they no longer want to be represented by the union that they voted in. That has to be specific. And I think what you also have, don't have rather, which is necessary under Levitz, is a numerical showing. We're talking a unit of 400 employees, and you don't have any in any of the offers of proof in any of the exchanges on the record. You don't have anything to indicate that there was going to be evidence put forward that 200 people didn't want to be represented by this union anymore. You do not have that. Well, I guess could you also justify it and just say, after everything I've heard, I think people are under sort of stress and coercion, so I'm just not going to believe that type of evidence. I want to vote. You know, I mean, to believe, you know, that, I mean, people, yeah, people will come in and say anything at this point because they're all concerned about retaliation. Sure, I mean, there's no evidence, but surely somebody, if that had come forward, that could have been another reason, right, for the administrative law judge, in his discretion, to say this evidence isn't coming in, it's not relevant on the issue. That certainly could have been another reason that's not one of them before us, but certainly there'd be nothing wrong for an administrative law judge to consider that. Well, if it is so, then unverified statements might be something one could consider for a call for an R.M. election, but not for withdrawal of recognition, correct? Right, it has to be objective evidence, and under Levitz, I think there have been cases, the cases are bearing out, it's a developing area of law, but the cases are bearing out that what you see when an employer has withdrawn recognition lawfully under Levitz without running the election is specific either pollings of employees, surveys, or letters to say, like there was one case where out of 200 employees, they put forward, one of the employees who didn't want representation anymore, collected 114 names, gave those to the employer, so while the employer didn't conduct a poll, and it wasn't exactly signatures, you had actual numerical showing. So yes, I've not seen a case post-Levitz that allows unverified statements in that has privileged an employer to withdraw. Well, and maybe that's because the standard for the R.M. election is lower than the standard for the withdrawal. Sure, and under, if you do the R.M. petition, you don't withdraw at your peril, right? So it's a safer, they're certainly, an employer is certainly entitled to do both, but I think what we have here is the bearing out of this first one that they chose, which is they've done it at their peril, and that's where we are. Unless there are any further questions? No further questions. Full enforcement of the board's order. Thank you. Just real briefly, if it wasn't clear in the brief, our position is that we believe the withdrawal of recognition was proper. Therefore, any conduct with respect to dealing with the union thereafter, we need not recognize them as the bargaining representative, and therefore conducted business without a union representing the employees. Insofar as what I wanted to bring up was the tentative agreements that were reached and the bargaining and also the remedy that the board had ordered. One hundred seventy tentative agreements were reached between the parties during the period of time that the COTEL itself engaged in negotiations. The union had requested and COTEL agreed that the economic issues be kept until the end, and the continuing negotiations were non-economic issues. And so it is one where the tentative agreements later in the board's decision was that it should be reinstated and the parties abide by it, yet the board ordered the COTEL to pay for the union's cost for negotiations for that time period. Our position is that, yes, you can order the reinstatement, but obviously the time was well spent entering into tentative agreements and negotiating between the parties, and therefore the award of union fees for that period of time should not have been ordered. All right, thank you. This matter will stand submitted. The last matter on calendar this week is Joseph F. Frankel v. HTH Corporation, 11-18042.
judges: Schroeder, Callahan, Smith